IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiffs,<br><br>vs.<br><br>DRAKE L. BANKS SR.,<br><br>Defendant. | 4:19CR3116<br><br>**FINDINGS, RECOMMENDATION, AND ORDER** |

This matter is before the court on the motion to suppress filed by Defendant Drake. L. Banks, (Filing No. 53). Having reviewed the evidence and heard the testimony, and being fully advised, I recommend that the motion be denied in its entirety.

ANALYSIS

Defendant Banks challenges the validity of a traffic stop conducted on Interstate 80 near Lincoln, Nebraska on September 19, 2020, his detention thereafter, and the search of a rental car in which he was travelling. Zachary Macomber was the driver; Defendant Drake L. Banks, Sr. was the passenger. Defendant Banks further seeks to exclude all statements made to law enforcement while at the scene of the traffic stop as either fruit of the alleged Fourth Amendment violations or as obtained in violation of his Fifth Amendment rights.

A.   Initiation of the Traffic Stop

On September 19, 2020, Lincoln, Nebraska Police Officer John G. Hudec was patrolling eastbound Interstate 80 traffic near Lincoln, Nebraska. Hudec

noticed a silver Nissan Altima with a fleet plate—a company fleet vehicle or rental vehicle—being driven by Macomber. As he watched the vehicle, he saw it following another vehicle at slightly over .9 seconds of following distance. A three-second following distance is considered reasonable when roads are clear and dry. The Nissan passed a semitruck and cut back in front of it at a distance of about 40 feet—too close for safety. Based on these observations, Hudec initiated a traffic stop for following too closely and improper passing in violation of Nebraska law. See, Neb. Rev. Stat. 60-6,139(1) and Neb. Rev. Stat. 60-6,140(1).

Defendant Banks questions the validity of the traffic stop. A traffic stop is reasonable if the officer has probable cause to believe that a traffic violation has occurred. U.S. v. $45,000.00 in U.S. Currency, 749 F.3d 709, 715 (8th Cir. 2014) (citing Whren v. United States, 517 U.S. 806, 810 (1996)). The detaining officer must possess an "objectively…reasonable basis for believing that the driver has breached a traffic law." United States v. Mallari, 334 F.3d 765, 766-67 (8th Cir. 2003) (quoting United States v. Thomas, 93 F.3d 479-485 (8th Cir. 1996)). And, "[a]ny traffic violation, however minor, provides probable cause for a traffic stop." United States v. Gadson, 670 F. App'x 907, 908 (8th Cir. 2016) (internal citation omitted). This is true "even if the police would have ignored the traffic violation but for their suspicion that greater crimes are afoot." United States v. Long, 532 F.3d 791, 795 (8th Cir. 2008) (internal citation omitted).

Officer Hudec's observance of traffic violations—following to close and improper lane change—provided probable cause to stop the vehicle. The traffic stop did not violate Banks' Fourth Amendment rights.

B.  Duration of the Traffic Stop

Defendant Banks next contends that Officer Hudec impermissibly extended

2

the stop without reasonable suspicion of other wrongdoing. "An officer may detain the occupants of a vehicle while completing routine tasks related to the traffic violation, such as asking for license and registration or inquiring about the occupants' destination, route, and purpose." United States v. Chartier, 772 F.3d 539, 543 (8th Cir. 2014). And, a law enforcement officer conducting a traffic stop "may extend the stop and broaden the investigation" if he or she "discovers information leading to reasonable suspicion of an unrelated crime." United States v. Woods, 829 F.3d 675, 679 (8th Cir. 2016), reh'g denied (Dec. 20, 2016) (internal citation omitted). "Reasonable suspicion exists when an officer is aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." United States v. Mosley, 878 F.3d 246, 251 (8th Cir. 2017) (internal quotation omitted).

"[B]oth innocent and criminal acts can create reasonable suspicion." United States v. Juvenile TK, 134 F.3d 899, 903 (8th Cir. 1998) (citing United States v. Sokolow, 490 U.S. 1, 9 (1989)). When evaluating whether an officer had reasonable suspicion to extend a stop, the court considers "the point of view of trained law enforcement officers based on the totality of the circumstances known to the officers at the relevant time." United States v. Zamora-Lopez, 685 F.3d 787, 790 (8th Cir. 2012) (citing United States v. Stewart, 631 F.3d 453, 457 (8th Cir. 2011)).

Officer Hudec noticed that the vehicle was a rental car, and that it was equipped with a police radar scanner, with an air freshener hanging from the rearview mirror. He noted that, in his experience, those items—sometimes used to evade detection of criminal activity—are not typically observed in a rented vehicle. Hudec also noticed one of the occupants of the vehicle smoking a cigarette – a behavior in violation of many car rental agreements but sometimes done to cover the odor of drugs. The officer noticed the car had a "lived in" look:

3

It was exceedingly messy for a rental car – with garbage, ashes, and empty drink containers throughout, indicating the vehicle was on a long distance trip. When Hudec asked to see the rental agreement, the vehicle occupants could not produce a copy.

The driver identified himself as Brendon Macomber and provided Brendon Macomber's social security number, but he did not have identification. The officer considered this odd for someone travelling.

In response to questions, Macomber and Banks gave the officer divergent descriptions of their travel. Macomber told Hudec that they had travelled to Denver, Colorado, visited family, and stayed for approximately five days. Macomber stated the vehicle was a one-way rental to return to Missouri from Colorado, and it was rented by Jermaine Thomas. One-way rentals are commonly used for drug trafficking. Hudec posed questions to Defendant Banks, who told the officer that he and Macomber were returning from Colorado after attempting to visit a friend, but the friend was not available. So, they were returning to Missouri. Banks stated they had not stayed the night anywhere. Banks stated the vehicle was a round-trip rental; and it was rented by Macomber's uncle in Missouri to drive to Colorado and return.

The officer told Macomber that he would receive only a warning. But contrary to the officer's experience, Macomber continued to appear very nervous and he was sweating profusely, which contributed to the officer's suspicion that there may be contraband in the vehicle. Officer Hudec contacted his supervisor, Jason Mayo, to request a canine.

Based on totality of these circumstances, the court finds that the officer had a sufficient, articulable, and reasonable suspicion to extend the traffic stop to investigate for additional criminal activity.

Hudec shook Macomber's hand and told him he was free to go. As Macomber began exiting the officer's cruiser, the officer asked Macomber if he would answer additional questions. Macomber agreed to do so. Macomber denied possession of drugs or weapons, and he denied consent to search the vehicle.

    C.    Vehicle Search

Macomber was advised that he would be detained pending a canine search. Hudec approached Banks. In response to the officer's questions, Banks stated he had "smoke" in the vehicle and pulled a baggie of raw marijuana from the rental vehicle's glove box. Banks was told to exit the vehicle and be seated in the cruiser. When Banks stood up to exit the stopped vehicle, the officer saw marijuana shake (marijuana remnants) throughout the front seat area of the vehicle. Banks and Macomber were then both placed in the back seat of Hudec's cruiser. They were not handcuffed.

Based on the presence of marijuana in the vehicle, Hudec concluded he had probable cause to search the vehicle. Banks challenges this search as violating his Fourth Amendment rights.

    1)    Legitimate Expectation of Privacy

As a threshold issue, Defendant Banks bears the burden of showing, by a preponderance of the evidence, that he had a legitimate expectation of privacy in

5

the rental car in question. And absent an expectation of privacy, he does not have standing to challenge the constitutionality of the search.

"[A]n unauthorized and unlicensed driver may challenge a search of a rental car operated with the renter's permission." United States v. Bettis, 946 F.3d 1024, 1029 (8th Cir 2020). At the time of the vehicle stop, Macomber and Banks could not produce a rental agreement but stated the vehicle was rented by Jermaine Thomas. Following Defendants' arrest, the government subpoenaed the rental agreement. The rental agreement indicates that Jermaine Thomas rented the vehicle, but it lists "none" under the category for additionally authorized users. Put differently, neither Macomber nor Defendant Banks is listed as an authorized operator. And the vehicle was rented for travel within only Missouri.

There is no evidence that Jermaine Thomas gave Banks permission to drive or use the vehicle at all, much less outside the state of Missouri. Defendant Banks has therefore not met his burden of proving, by a preponderance of the evidence, that he has standing to contest the constitutionality of the search. So, his motion to suppress the evidence located during the search of the rental car must be denied.

    2)    Probable Cause

Even assuming Banks had a reasonable expectation in the vehicle and its contents, the vehicle search was supported by probable cause and therefore valid. "As long as the law enforcement officials have probable cause, they may search an automobile without a warrant under the automobile exception." United States v. Fladten, 230 F.3d 1083, 1085 (8th Cir. 2000). "Probable cause exists 'when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime will be found in a particular

6

place.'" United States v. Mayo, 627 F.3d 709, 713 (8th Cir. 2010) (quoting Fladten, 230 F.3d at 1085).

When a suspect admits that there are drugs in a vehicle, there is probable cause to search the vehicle for drugs. United States v. Coleman, 700 F.3d 329, 336 (8th Cir. 2012). And, "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." Id.

Banks admitted to having marijuana in the car, and Hudec observed marijuana shake inside the vehicle in plain view. The warrantless search of the vehicle was supported by probable cause and the evidence located during the search should not be suppressed.

    D.    Statements

    1)    Fourth Amendment

Defendant Banks argues that any statements he allegedly made during his encounter with Hudec are fruit of the purported Fourth Amendment violations. As discussed above, Banks' Fourth Amendment rights were not violated. As such, Defendant Banks cannot suppress any alleged incriminating statements as violating his rights under the Fourth Amendment.

    2)    Fifth Amendment

Defendant Banks further argues that statements he made during the encounter with Hudec should be suppressed under Miranda v. Arizona. However, "police need not provide Miranda warnings before roadside questioning pursuant

to a routine traffic stop because such questioning does not constitute 'custodial interrogation'" within the meaning of Miranda. United States v. Howard, 532 F.3d 755, 761 (8th Cir. 2008).

Banks was not in custody, within the meaning of Miranda, at the time he made any statements to Hudec during the traffic stop and prior to being place in the backseat of the cruiser.

While seated in the back of Hudec's police cruiser, Banks purportedly made incriminating statements to Macomber. Those statements were captured on a police recording inside the car. But even assuming Banks was in custody, within the meaning of Miranda, when he was locked inside the police vehicle – the statement made by Banks while seated in the backseat were not in response to any questions posed by law enforcement. They were voluntarily made during his dialogue with Macomber. The fact that a police recording of those statements was captured does not change that analysis; "officers do not interrogate a suspect simply by hoping he will incriminate himself." United States v. Hernandez-Mendoza, 600 F.3d 971, 976–77 (8th Cir. 2010).

Banks' Miranda rights were not violated, and his statements at the scene of the traffic stop, including those made while seated in the officer's cruiser, should not be suppressed.

CONCLUSION

In sum, the court finds that the initial stop and the subsequent extension of the stop to investigate, did not violate the Fourth Amendment. As to the vehicle search, Banks does not have standing to challenge the search of the rental vehicle, and even if he did, the search was supported by probable cause and was

constitutionally permissible. And finally, there is no constitutional basis for suppressing Banks' purportedly incriminating statements made at the scene of the September 19, 2019 traffic stop.

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable John M. Gerrard, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b), that the motion to suppress filed by the defendant (Filing No. 53) be denied in its entirety.

The defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

IT IS ORDERED that the jury trial of this case is set to commence before John M. Gerrard, Chief United States District Judge, in Courtroom 1, United States Courthouse, Lincoln, Nebraska, at 9:00 a.m. on **September 14, 2020**, or as soon thereafter as the case may be called, for a duration of three (3) trial days.

August 14, 2020.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge